# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LAWRENCE MARK MATTHEWS,

       Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No.  325762
Washtenaw Circuit Court
LC No.  13-001525-FC

Before:  BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of conspiracy to commit first-degree premeditated murder, MCL 750.157a and MCL 750.316(1)(a), carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant to life in prison for the conspiracy conviction, three to five years for the CCW conviction, and two years for the felony-firearm conviction.  We affirm.

## I.  FACTUAL BACKGROUND

On January 1, 2013, Brandon Charles and Seylon Dudley were seriously wounded when shots were fired into their car as they drove on I-94 in Wayne County.  The shots were fired from a car carrying Willie Wimberly, Steven Smith-Rush, and defendant.  Charles and Dudley survived the attack.  Wimberly was charged in Wayne County with assault with intent to commit murder, MCL 750.83, and felony-firearm in connection with the shooting assaults (the "Wayne County case").

The charges against defendant in this case arise from the subsequent shooting death of Charles in Washtenaw County.  According to evidence presented at trial, Wimberly told his friend, Avantis Parker, that defendant fired the shots at Charles and Dudley.  Eventually, Wimberly enlisted the assistance of defendant, Avantis Parker, and Terrance Parker (brother to Avantis), to kill Charles to prevent him from testifying at Wimberly's preliminary examination in the Wayne County case.  On January 29, 2013, the night before Wimberly's preliminary examination was to be held, defendant and the Parker brothers located Charles in Washtenaw County and shot him to death.

Defendant was charged with open murder, MCL 750.318, conspiracy to commit first-degree murder, witness intimidation, MCL 750.122, felony-firearm, and CCW in connection with Charles's murder. On November 7, 2013, defendant agreed to plead guilty to second-degree murder, MCL 750.317, and witness intimidation, and to provide truthful testimony in all proceedings in this matter. In exchange, the prosecution agreed to dismiss the other charges and to accept a sentence of 12½ to 15 years in prison. Sentencing was to be delayed until all proceedings against all other defendants were concluded.

On November 13, 2013, the prosecution filed a motion to set aside defendant's guilty plea. The motion alleged that it was not until November 12, 2013—five days *after* he accepted the plea bargain—that defendant revealed material facts regarding the extent of his involvement in the Wayne County case, and that the circumstances would render defendant unavailable as a witness in the Wayne County case based on his Fifth Amendment right against self-incrimination. The trial court granted the prosecution's motion, finding that defendant's presence in Wimberly's car on January 1, 2013, was a material fact, and that defendant's failure to disclose that fact made the plea negotiations unfair.

The case proceeded to trial and a jury acquitted defendant of the charges of open murder and witness intimidation, but convicted him of conspiracy to commit first-degree murder, CCW, and felony-firearm. This appeal followed.

## II. ANALYSIS

## A. GUILTY PLEA

On appeal, defendant first argues that the trial court abused its discretion when it granted the prosecution's motion to set aside his guilty plea. We disagree.

We review for an abuse of discretion a trial court's decision on a motion to withdraw a plea. *People v Billings*, 283 Mich App 538, 549; 770 NW2d 893 (2009). An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. *People v Carnicom*, 272 Mich App 614, 616-617; 727 NW2d 399 (2006). MCR 6.310(E) provides that "[o]n the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement." As a general rule, the prosecution is bound by a plea agreement, even if the agreement proves to be unwise. *People v Martinez*, 307 Mich App 641, 653; 861 NW2d 905 (2014), citing *People v Cummings*, 84 Mich App 509, 513; 269 NW2d 658 (1978). However, a defendant's failure to disclose material information during plea negotiations may justify setting aside a defendant's plea. *Cummings*, 84 Mich App at 513

The plea agreement provided that defendant would plead guilty to second-degree murder and witness intimidation, and would provide truthful testimony in all proceedings in the matter, i.e., about the murder of Brandon George on January 29, 2013. In return, the prosecution agreed to dismiss the other charges and to accept a sentence of 12½ to 15 years in prison. The prosecution moved to vacate the plea because defendant did not reveal that he was at the scene of the January 1, 2013 shooting, but instead untruthfully asserted that he learned of that shooting from news reports.

We conclude that the trial court did not abuse its discretion by granting the prosecution's motion to set aside the plea. A major portion of the plea consisted of defendant's agreement to provide truthful testimony in proceedings in this case. Defendant's presence at the January 1, 2013 shooting event was a material fact that defendant did not disclose during the plea negotiations. Defendant did not disclose that fact until just before Wimberly's preliminary examination. That disclosure was contrary to defendant's previous disclosure that he learned about the shooting from a news report. As a result, defendant would either lie if he maintained that he learned about the January 1, 2013 shooting from a news report, or he would expose himself to criminal liability for the January 1, 2013 shooting if he testified truthfully. Thus, the prosecution lost the benefit of its bargain; the threat of an attack on defendant's credibility made his testimony so problematic that it was effectively useless.

Defendant maintains that the prosecution knew about his presence at the January 1, 2013 shooting because Avantis Parker told the police that he had been told that defendant was present at that shooting. Although the prosecution admitted that Avantis Parker had said that Wimberly told him that defendant was the person who fired the shots on January 1, 2013, the prosecution stated that it relied on defendant's *own* statements when negotiating the plea. Moreover, Avantis Parker's hearsay allegation did not relieve defendant of the obligation to negotiate in good faith, which he did not do. Therefore, under the circumstances at bar, the trial court did not abuse its discretion by granting the prosecution's motion to set aside defendant's plea.[1]

## B. SUPPLEMENTAL JURY INSTRUCTION

Next, defendant argues that the trial court erred and abused its discretion by responding to a jury inquiry by giving an imbalanced response that denied him his due process right to a fair trial. We disagree.

We review de novo a claim of instructional error, and review for an abuse of discretion a trial court's determination that a specific instruction is applicable to the facts of the case. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011).

During deliberations, the jury sent a note asking, "is flight an element of aiding and abetting?" After consulting with counsel in chambers, the trial court responded to the jury's inquiry by advising it that flight was not an element of aiding and abetting, but could be used to determine aiding and abetting. Defendant argues that this supplemental instruction was imbalanced and denied him his due process right to a fair trial.[2] He further argues that the trial

---

[1] For the same reasons, we conclude that the trial court did not abuse its discretion by denying defendant's motion for reconsideration regarding the setting aside of his guilty plea. Defendant has not demonstrated "a palpable error by which the court and the parties [were] misled[.]" See MCR 2.119(F)(3).

[2] Defendant relies on *People v France*, 436 Mich 138, 163; 461 NW2d 621 (1990), to argue that the trial court's supplemental instruction was a "substantive communication" with the jury, entitling him to a presumption of prejudice. Defendant's reliance on *France* is misplaced. The *France* Court dealt with "ex parte communication with a deliberating jury," *id.* at 161, which is

court should have responded to the jury's question by simply stating that flight is not an element of aiding and abetting, then referring the jury to the instruction on flight it received previously.[3]

The supplemental instruction was proper and did not deprive defendant of his due process right to a fair trial. Defendant was charged with open murder under an aiding and abetting theory. The trial court instructed the jury on flight and aiding and abetting, and significantly, gave the following instruction immediately after the aiding and abetting instruction:

> An aider and abetter's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal. The defendant's participation in the planning or execution of the crime and evidence of flight after the crime.

In its supplemental instruction, the trial court instructed the jury that flight was not an element of aiding and abetting. Contrary to defendant's assertion, the trial court's statement that the jury could use evidence of flight to determine aiding and abetting was not imbalanced. Defendant does not contend that the supplemental instruction stated that flight could be used to infer *only* evidence of guilt. The supplemental instruction was not inconsistent with the principal instruction on aiding and abetting. Indeed, the instruction was consistent with well-established law. See *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) ("An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include . . . evidence of flight after the crime."), quoting *People v Turner*, 213 Mich App 558, 568-569; 540 NW2d 728 (1995). overruled in part on other grounds by *People v Mass*, 464 Mich 615, 628; 628 NW2d 540 (2001).

Defendant also argues that the fact that the jury returned a verdict just 20 minutes after receiving the instruction is evidence that the instruction was imbalanced. We find that argument unconvincing. The timing of the verdict is not determinative of whether the instruction was improper or imbalanced. Moreover, the aiding and abetting instruction was not relevant to the conspiracy charge of which defendant was convicted; rather, it regarded the open murder charge of which the jury acquitted defendant.

In sum, we conclude that the trial court's supplemental instruction was legally correct. We further conclude that the trial court did not abuse its discretion by determining that the instruction was applicable to the facts of this case. See *Hartuniewicz*, 294 Mich App at 242.

---

not at issue here. Because no ex parte communication occurred in this case, defendant is not entitled to a presumption of prejudice.

[3] During jury instructions, the trial court instructed the jury on flight as follows:

> There has been some evidence that the defendant tried to run away and/or tried to hide and/or ran away and/or hid after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and if true, whether it shows that the defendant had a guilty state of mind.

## C. OTHER ACTS EVIDENCE UNDER MRE 404(B)

Finally, defendant argues that the trial court abused its discretion by allowing the prosecution to present extrinsic evidence of the shooting at issue in the Wayne County case. Defendant argues that this evidence was improper character evidence, inadmissible under MRE 404. We disagree.

We review de novo preliminary questions of law regarding admissibility. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). "The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion," which occurs where the trial court "chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). The question of whether the probative value of such evidence is, under MRE 403, substantially outweighed by the danger of unfair prejudice "is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *Id.* at 670.

The prosecution argued that the evidence regarding the Wayne County shooting was admissible under the res gestae exception to MRE 404(b)(1). However, in *People v Jackson*, 498 Mich 246, 250-251, 265-276; 869 NW2d 253 (2015), our Supreme Court held that there is no res gestae exception to MRE 404(b), and that the admissibility of other acts evidence must be evaluated under MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior to or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b)(1), other acts evidence must (1) be offered for a proper purpose, (2) be relevant, and (3) not have a probative value that is substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). A proper purpose "is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005).

Defendant was charged with various offenses related to the murder of Charles. The evidence showed that, to prevent Charles from testifying at Wimberly's preliminary examination for charges arising from the January 1, 2013 shooting, Wimberly recruited defendant and others to kill Charles. Thus, the January 1, 2013, shooting event was relevant for the noncharacter purposes of showing defendant's motive and intent to participate in Charles's murder.

Further, defendant has not shown that the other acts evidence was unfairly prejudicial, i.e., that it presented "a danger that marginally probative evidence w[ould] be given undue or preemptive weight by the jury." See *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785,

796 (1998)   The evidence of the Wayne County shooting incident was critical to a proper understanding of the motive for Charles's subsequent murder.  Moreover, any potential for unfair prejudice was minimized by the trial court's instruction to the jury that it could consider the other acts evidence only for the purpose of determining whether defendant had a reason to participate in the killing of Charles.  The trial court specifically instructed the jury that it could not use such evidence to find that defendant was a bad person or had a propensity to commit crimes.  A jury is presumed to follow its instructions.  *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).  Accordingly, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  See MRE 403.  Therefore, the trial court did not abuse its discretion by admitting the evidence of the Wayne County shooting.

Affirmed.


/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter